WILLIAM H. MOTT, Respondent, *against* BERNHARD GRUN-
HUT, Appellant.

(Decided February 2d, 1880.)

Where the plaintiff supplied groceries which were used in the defendant's house, and the defendant himself made payments on account of them and promised to pay the balance,—*Held*, that this was evidence sufficient to render the defendant liable, although the plaintiff had supplied them on orders given by the defendant's wife and had charged them to her and given the credit for them to her, and had brought an action against her for the price of them in which he had been defeated, on the ground that there was no evidence that she was carrying on business or had a separate estate.

A wife is deemed to be acting as the agent of her husband where they are living together, and if she orders groceries for the general use of the family, although she may contract wholly in her own name and the credit is given exclusively to her under the impression that she is carrying on a boarding-house, the tradesmen upon ascertaining that this is not the fact ; that the husband is in reality the principal ; that the house for which the groceries were supplied was carried on by him, may resort to him as the principal.

APPEAL from a judgment of a District Court in the city of New York.

The facts are stated in the opinion.

*Walton C. Dupignac*, for appellant.

*D. A. Stephens*, for respondent.

CHARLES P. DALY, Chief Justice.—This action was brought against the defendant to recover a bill of groceries, such as families generally use. The defendant's wife who was living with her husband, bought groceries from the plaintiff for some time for cash. She then applied for credit, representing to him that she was keeping boarders; that she would pay the bill, but did not want her husband to know about it; and as she was living with her husband, as the

plaintiff testified, "in a nice house in Abingdon square," and he supposed she had means, he opened an account with her, charging the groceries to her, and, as he testified, giving the credit to her. Payments on the account were made, partly by the wife and partly by the husband, the husband giving his own checks in payment, so that he not only knew that his wife was obtaining groceries of the defendant but he afterwards promised the plaintiff to pay in monthly instalments the amount that remained due on the account, which mode of payment the plaintiff declined. The plaintiff then brought an action against the wife to recover what was due, which was defended on the ground that it was not shown in the action that she had a separate estate, to which the plaintiff looked for payment of his bill; and on the further ground, that being a married woman she was not liable for necessaries furnished to the family; and the judge, upon the ground that her declaration that she was keeping boarders could not be construed to mean that she was herself doing business, as she was living with her husband; and as it did not appear that she was keeping the house herself, and carrying on business, dismissed the complaint.

The present action was then brought against the defendant, when, upon substantially the same state of facts, the opposite defence was set up, that there was no contract, express or implied, with the husband, but that the groceries were supplied to the wife, exclusively upon her credit; in which action, the judge below, as I think he was justified in doing, upon the evidence, gave judgment against the defendant.

The facts, as I have said, were not substantially changed. The defendant testified that he had no boarders; but it was shown that the boarders consisted chiefly of his own relations; and as they were all living together, in one family, the justice was justified in presuming that he, and not the wife, was carrying on the boarding-house, especially as he paid the plaintiff, upon several occasions, for the groceries furnished to carry it on; and afterwards promised to pay what remained due upon the account, in instalments. He under-

took to qualify this, in his testimony, by declaring that he stated that he offered to pay the bill rather than have his wife sued; but the justice, from the judgment, evidently believed the witness Elliott, who swore to the admission; who testified that the defendant told him that the plaintiff had abused him for having used up the groceries, and then not paying the bill; and when this witness was asked, if the defendant spoke of it as an indebtedness he owed, the witness replied, he said he owed it and intended to pay it, but could not pay it then. This witness also testified that the boarders they had in the house were the defendant's sister, two nephews and a niece.

Where husband and wife are living together in this way, it is presumed that he assents to contracts made by his wife for necessaries supplied, as these were, for the use of the family; which can be repelled only by proof of express notice of previous dissent, or a notice not to trust the wife (*McCutchen* v. *McGahay*, 11 Johns. 281, 282); and even if he has expressed his dissent, and afterwards knows that necessaries have been furnished to her, and promises to pay for them, the promise is regarded as a recognition that they were supplied with his consent and approbation. (*Keller* v. *Phillips*, 39 N. Y. 356; *Theriott* v. *Bagioli*, 9 Bosw. 578; *Cromwell* v. *Benjamin*, 41 Barb. 559; Story on Contracts, § 101, 102.) Where it appears, however, that the credit is given to the wife alone, as where she contracts for dresses, stating to the tradesman that her husband never paid the bills, but she always paid her own; and some of the articles, when sent home, she directs to be put away, that her husband might not see them, it would be held that the credit was given exclusively to the wife, and not to the husband; that the general liability of the husband is repelled by the circumstances of such a case. (*Bentley* v. *Griffin*, 5 Taunt. 356.) Or where jewelry is bought and the bill made out to the wife in her own name, upon her statement that she bought the articles for a friend in the West Indies, who would send the money for them as soon as received, to which the tradesman answered " that will do very well," the general liability of the

husband is repelled. (*Taylor* v. *Britton*, 1 C. & P. 16 [note 1].)

But this is not such a case. The husband and wife here were living together, the articles supplied were provisions for family use, and were used in the family. The defendant had knowledge that they were supplied by the plaintiff, and had made payments on the account. He never expressed his dissent, or gave the defendant notice that he was not to furnish any more groceries on the wife's order; and, finally, with a knowledge of the nature of the account, and of what remained due upon it, he offered to pay the residue if the plaintiff would receive it in instalments, which was amply sufficient to justify the judgment.

A wife is deemed to be acting as the agent of her husband in a case like this, where they are living together, and she orders groceries for the general use of the family; and although she may contract wholly in her own name, and the credit is given exclusively to her, under the impression that she is carrying on a boarding-house as her own separate business, the tradesman upon ascertaining that this was not true, that the husband was in reality the principal, that the house for which the groceries were supplied was necessarily carried on by him, may resort to him as the principal, although the wife, acting as his agent, made the contract in her own name, which is merely enforcing against him a familiar rule in the law of principal and agent.

The judgment should be affirmed with costs.

VAN BRUNT, J., concurred.